Our next case for today for argument is 20-2064, Kirby v. HHS. Mr. Gage, please proceed. Thank you. May it please the court, we tried this case in front of Special Master Horner in July of 2019. Special Master Horner considered the record evidence as a whole, which means the medical records, the expert opinions, and the lay testimony. Special Master Horner then issued his ruling, finding in petitioner's favor, and he thoroughly articulated his reasoning. Judge Smith then reweighed the evidence and ruled against Ms. Kirby. The reasoning given by Judge Smith was a misapplication of subsection 13A1 of the statute, which is what we are here today asking this court to clarify. Subsection 13A1 establishes that Special Masters shall award compensation if they find, on the record as a whole, and by a preponderance of the evidence, the requirements of subsection 11 of the statute, that no factor unrelated to the vaccine was the actual cause, and Congress added that Special Masters cannot make these claims substantiated by medical records or medical opinion. How this claims of petitioner alone language is resolved, we believe, is the issue before this court. It is petitioner's contention that once a petitioner has submitted her medical records or has filed a medical opinion, the prohibition of finding for a petitioner based on her claims alone is satisfied. It does not need to be revisited during the case every time the Special Master is deciding a fact. What Respondent appears to be arguing, and what we believe Judge Smith accepted, is that a petitioner's testimony by itself cannot be used to establish any of the facts that go into the Special Master's decision when he or she is making that decision on the record as a whole, unless there is a corroborating medical record that independently establishes that fact. It should be noted that in more than 30 years of applying this statute and doing this work, that this court has never, that particular interpretation of this statute has never been adopted by this court. Congress made it clear that Special Masters are required to make their rulings on the record as a whole, and of course, petitioner's testimony is part of that record evidence. An example of what Respondent claims to be legal error is found at page 24 of Special Master Horner's decision, which the court can find at page 38 of the appendix. At the bottom of that page, it reads, and I quote, Petitioner testified that she continued that home exercise plan for over a year, and that she remained symptomatic for the duration. I found petitioner's testimony on this point to be credible, end quote. This is not the only evidence in the record on the six-month issue, however, to focus the issue before this court, this finding of credibility by the Special Masters at the heart of this appeal. This was important testimony to be sure by Ms. Kirby in relation to the establishment of her six-month requirement in her case. We produced the home exercise records, however, there are no, we admit, there are no records from a medical provider where the dates that she did her home exercise program are recorded, and there are no records from a medical provider which record the level of her arm pain during or after her home exercise. On this point, Special Master Horner simply relied on Ms. Kirby's testimony. Counsel, this is Judge Moore. The Special Master also credited Dr. Kinsporn's testimony, and Dr. Kinsporn testified, I think at A151 and 156, that Ms. Kirby's articulation of her intermittent pain extending over a year with her radial neuritis was consistent with his understanding of that injury. Now, I know he wasn't a treating physician, but can't an expert who testifies that the patient's symptoms as articulated by the patient are consistent with his understanding of the injury she suffered, can't that be corroborating evidence in and of itself? Yes, Your Honor, it is, and in fact, the last page of Special Master Horner's decision, which is appendix page 40, Special Master Horner says, Dr. Kinsporn likewise provided a compelling expert opinion that petitioner's reports of intermittent pain are consistent with a recovery from her nerve injury. So he clearly also accepted Dr. Kinsporn's expert testimony about the course of recovery and how that would look for Ms. Kirby when you're dealing with a nerve injury. However, you know, so as far as corroborating evidence for this particular case is concerned, petitioner obviously agrees that there is corroborating evidence, there's more evidence. The reason that I point to this particular record on the home exercise program is because I think it focuses the real issue here. Petitioner agrees that there are corroborating records and expert testimony to establish a six-month rule in this record. However, the focus I believe this court needs to take is to clarify the application of this language in subsection 13A about petitioner's testimony not being able to be used. It's, and that's why I focused on the home exercise program. There are no other reasons for that. But the law has never been... Mr. Gage, this is Judge Toronto. Can I just ask this question? Suppose for a minute that putting aside any question about whether the government is arguing or the tribunal that the Court of Federal Claims held as a legal matter that each key fact has to have record corroboration, why is it just as a matter of arbitrary and capriciousness or reasonableness, why is it reasonable in the absence of any medical documentation basically to say between December of, what is it, 2013 until the fall of 2015, that the government had written, notwithstanding a number of medical appointments in that period, why is it reasonable to credit Ms. Kirby's testimony when one might have expected, and that might not be the proper formulation, some of those medical records to record a continuing radial neuritis thumb problem? Right. So, Your Honor, the arbitrary and capricious standard, obviously, we have to be looking at this through that lens. Special Master Horner articulated the answer to your question, I believe. Ms. Kirby testified that she was told, and it's absolutely accurate. I mean, Dr. Kinsborn agreed, and I don't believe the government's expert disagreed, that a radial nerve injury, there was no more treatment for it. Ms. Kirby was told that. It was getting better. She was following her home exercise program. There was no reason for her to continue to seek treatment for that. Her doctor already knew about it. It was already in her record. What about the January 2014, I guess, Pike Bowling Green Clinic visit, which made it might have been for a general physical exam? Why would not that record have recorded this problem? And yet, I think you agree it doesn't, right? This is in 91 and 92 of the appendix. I guess it actually continues. It's in 94. I believe she was... I think there's testimony to the effect that she was just going to get her FLSA certification paperwork. I'm not sure that's a complete answer to the generality of this physical exam, and therefore, whether it might be significant that there's no mention at that point of either the continuing home exercise or continuing pain in the right thumb. And the lack of mention, Your Honor, is key to this and was to Special Master Horner's decision that it doesn't say. The thing that would create a problem and Special Master Horner would have needed to deal with is if it says, I checked her and asked her about her radial nerve injury, and she informed me that it was completely healed. Then she turns around and testifies that it was not, and it continued on for a year. That would be problematic, but that's not the facts of this case. A record that is silent is just a record that's silent. It doesn't portend in one direction or the other. She doesn't have to complain about everything that she's ever told her doctor before when she's going in for FLSA paperwork to be filled out, and I think that was Special Master Horner's decision. That was, I think he commented, that was certainly the flavor of how he addressed that. There are no records here that directly contradict her testimony. There are records where we would like, if she knew she was going to go into a legal proceeding later on, maybe she would have brought that up every time even though she was there for a different reason. She was there for a different reason, and she was told that she couldn't have, that there was no further treatment for this and keep doing your home exercise. That's what she did. I'd like to reserve the rest of my time for rebuttal. Thank you. Thank you, Mr. Gage. Ms. Openshowski, please proceed. Mayors, please, the court, my name is Mallory Openshowski for the Secretary of Health and Human Services. The court should affirm the ruling of the court of federal claims dismissing the petitioner's petition for failure to meet threshold statutory requirements. This appeal involves two separate statutory requirements under the Vaccine Act. First, the petitioner showed that the injury persisted for at least six months, and second, that she can meet her burden of proof based on more than her testimony alone, unsubstantiated by medical records or medical opinion. That provision applies to the separately carved out statutory requirement of six-month severity. That provision has been interpreted as such by other review in court. For instance, the Court of Federal Claims in Jeremy v. HHS 127, Federal Claims 22299, cited in the brief, states that petitioner's word alone and a letter, including a letter from an expert opinion postdated after the fact, were not sufficient to show that the symptoms persisted beyond six months when contemporaneous medical records did not bear out that determination. That was also the case in Stavritis v. HHS from the Claims Court 07261, cited in the brief, again, specifically citing section 300A.13.1 of the Federal Claims Act, section 13A.1, in analyzing the six-month severity requirement. This requirement, carved out by Congress, requires to conjure an evidence. Can I just ask, this is Judge Taranto. So you've cited a couple of Court of Federal Claims decisions, which, as you know, are not precedential for us. So putting aside non-precedential decisions, why is your position correct that, and I'm not even, how would you state your position, every significant fact bearing on the medical question has to be corroborated, as opposed to corroboration of, you know, in general? Because in other corroboration contexts with which we are familiar, it is the corroboration idea, like for, you know, it's a flexible record as a whole kind of corroboration, not every single fact kind of corroboration. Yes. So the government's position is that as to a specific, so the Vaccine Act contains, you know, a number of statutory prerequisites. Now, the core causation questions in Vaccine Act further, and that's more articulated by case law. The Alston Standard sets forth what a petitioner must show on the causation question. The six-month severity is a separately carved-out statutory section, and Congress, you know, explained why they did so, that it only intended to compensate injuries that were sufficiently severe and not to compensate those injuries that, while, whether they be mild or significant in the short term, deceased. I just want to speak to be concrete, at least the way I'm remembering it, and you can correct me if my recollection is wrong. There's certainly corroboration from October through into December of the issue with the thumb and the right arm and the radial neuritis. And at that point, the paper records go silent. But the expert for Ms. Kirby said it's actually, you know, medically reasonable that the condition would continue past December for, you know, basically until April, which I guess is a six-month period. Why is that insufficient? Why should that be legally insufficient corroboration under the statutory term provision that you're talking about? Well, a few problems with Dr. Kinsmore's statement. Dr. Kinsmore, of course, is testifying expert. You know, we clearly testified that he did not see or treat Ms. Kirby as no knowledge of her case until he stepped in as a litigation expert. And as the Court of Federal Claims was concerned about and cited the Epstein case, which also dealt with a similar problem, and a testifying expert can't come in and provide a fact that was not there to speak to contemporaneously. He can only, under a set of facts, he can provide an opinion as to whether that's medically reasonable. Of course, the government disagrees strongly that that opinion was medically reasonable. But he asked, he tested, Dr. Kinsmore testified, I'm basing my testimony on what Ms. Kirby has stated, which is unsupported. So bolstering an unsupported fact by a litigation expert is not preponderant evidence that a fact actually says this very clearly on the record. My testimony is based on, my testimony as to timing is based on what she said. And the contents of Ms. Kirby's testimony were incredibly vague, unsupported, and could not supplant what we do know from the medical records. And I do disagree that we are dealing with a complete, with complete silence after December of 2013. The January 2014 record with Ms. Kirby's primary care provider does contain, it does contain real information. This is not the case. Now, as Mr. Gage stated, if Ms. Kirby had stated, I have nothing, there's no problems with my right arm, let's never discuss this again, it's gone, we wouldn't be here. But this is also not the case where we have a complete omission and a drop-off of records and a petitioner that moves to another state, loses insurance, we have nothing to go on. She's before her primary care provider, the same person that she first reported her injury to, that diagnosed it and treated it, and she's there. There's a general physical examination. The appendix at page 91 shows that the FMLA paperwork was part of it. There is a physical examination. There is a review of systems where specifically neurological symptoms were inquired about, and that's the source of pain that she had. It was neurological. There were negatives for numbness. There's no numbness or tingling mentioned when just a month prior those symptoms were discussed. And she was actually examined. She was actually seen and touched by her primary care physician that day, and there were no symptoms reproducible on examination. That's real information, real objective information for the judge. Judge Moore, you're talking about the document on 91 and 92. Is that right, of the appendix? Yes. Okay. And so you said neurological systems were tested, and she didn't indicate that she had any neurological problems with her hand. Is that right? Yes. And specifically, the neurological review of systems, that's on page 92 of the appendix. What precisely does it say? It says, under neurological, not present, dizziness. Does that mean she does not have dizziness, or there are no neurological symptoms except for dizziness? How am I to understand that language? While the record, we don't have testimony from Ms. Chandler as exactly what, if there was a concern about dizziness, but the battery of neurological symptoms that you do inquire about. But counsel, look at all the others. Cardiovascular, not present, dash chest pain. I bet that doesn't mean that cardiovascular issues are not present except she does have chest pain, right? That would be really strange if she was complaining about chest pain and there was no other development or testing ordered. Where it also says gastrointestinal, not present, dash abdominal pain and change in bowel habits. If she's got chest pain and abdominal habits and a cough and difficulty breathing on exertion and eye pain, ear pain, runny nose, nasal congestion, you see the point I'm making. Where it says not present, dash. I don't think it means not present except these things are present. I think it means these are the things I've asked her about and they're not present. Isn't that a completely reasonable reading of this? It's reasonable to assume that those were key questions that were highlighted, but under standard... Why do you think it was more than that? What about this record tells you she was asked about any neurological symptoms in particular as opposed to only inquired about whether she has any dizziness? The assumption would just be based on the standard of care and what is done in a review of systems and what points on each of those categories are inquired about as under standard practice. That would be a reasonable assumption. Now, she further goes on... Wait, wait, time out. You're telling me that would be a reasonable presumption of how I should interpret what was done here and what this medical record actually means? Did you put any evidence into that effect? Because you want me to read this document and to understand its silence and in particular your argument in this case was that the fact that they reviewed neurological symptoms and she didn't point to any continuing issues in her hand ought to be construed as her affirmatively denying that they existed or affirmatively not in the sense that it feels like a direct question not responding. But that just seems quite inconsistent with the document itself. I certainly can see that the document does not spell out the key questions of numbness and tingling, but by having an actual examination in which these questions reasonably could have been asked or there is an actual examination questioning followed by a physical exam, you can see on the next page of the record at page 93, an actual physical examination of Ms. Kirby provided an opportunity for Ms. Kirby to both affirmatively state, explain, discuss pain and an opportunity for the practitioner to identify and source out any lingering deficits that may have remained at this point. Counsel, I think that your argument now gets to the case called Robey v. HHS. Now, it's a non-precedential case by a single special master. It's not even a CFC case. However, Judge Smith cites it positively. You cited in your brief affirmatively. And the portion of Robey v. Secretary of Health and Human Services cited by each of you is the following. Let me read it to you. Not only are medical records presumed to be accurate, they also are presumed to be complete. Is everybody still on? Okay. Yes. They are presumed to be complete in the sense that the medical records present all the problems of the patient. Completeness is presumed due to a series of propositions. First, when people are ill, they see a medical professional. Second, when ill people see a doctor, they report all of their problems to the doctor. Third, having heard about the symptoms, the doctor records what he or she was told. So is it the government's position, and based on what you're explaining it seems to be, that if she had met with a doctor and she had any continuing thumb-related or other neurological issues, the fact is, since the record is silent as to them, we should presume they don't exist. I mean, that's what Robey says. So is it the government's view that this court should adopt the Robey presumption, which seems to be cited affirmatively by Judge Smith and again cited in your brief? Yes, Your Honor. The government does contend that the Robey presumption, which stems from this court's long-standing precedent in this case, medical records are not infallible. There are typographical errors. There are lacking notations. And so the presumption is that lay witness testimony can supply useful information, and it can even overcome what a medical record says when it's clear, cogent, and compelling. That is not the case here. Ms. Kirby was not, as the Special Master acknowledged, her testimony made it difficult, if not impossible, to affix an end point to her pain. She, under questioning from her own counsel and asked, when did this resolve, petitioner, appendix at 136, I can't remember exactly. I would, I just continue to do, she refuses, because she affixes no end point, no orienting information when a fact finder could come in and say, was it, do you remember still doing? Counsel, if you have an injury and that injury persists for, say, a year or more, isn't it possible that you don't remember precisely what it ended, but you certainly remember it lasted longer than six months, which was her testimony? Well, it may be reasonable to assume that, but Ms. Kirby does not know when within the six months she believes that the injury, injury receded, and that's important. Under questioning from her counsel, again, at page 136 of the appendix, petitioner's counsel, we realize this is a long time ago, but can you give us a month and a year, or can you do that? Answer, no, I don't remember. She does say she believes it was more than a year, but there's that, there's nothing to substantiate that, and what the government is asking of a petitioner is not insurmountable, and it is achieved in other cases in which there is more. As the CFC cited again in the Epstein decision, corroboration does not have to mean a medical record. It can refer to non-medical record documentary evidence, calendars, date books, statements from third party disinterested witnesses, receipts, information that could substantiate human memory, and we don't have that here. It's the government's position that what can't substantiate it is an expert who says, anyone who has this condition, I would expect for it to last for at least a year, or at least six months, or it is completely reasonable that this condition would extend that long based on the nature of the condition. Is that not, why is that not sufficient for corroboration? When we have medical records for the first several months, she's saying it went on longer, and there's a medical expert who says her testimony is completely consistent with the trajectory of the injury that he would expect. Why isn't under these Well, I mean, first the government does, critically the government does contend that the special master also erred in accepting that testimony, that Dr. Kinsmore didn't have the expertise, or his opinion wasn't particularly credible on that point, because the competing expert from Respondent, who was far more credentialed per the special master, rejected outright the idea that a radial nerve neuritis can wax and wane in that manner. So whether that was even a competent evidence, but that opinion hinges to, he can have, Dr. Kinsmore is entitled to make the opinion that that injury can occur like that, but whether it did in Ms. Kirby is a matter that he can't supply based on a litigation review and statement of medical possibility. Looking at what actually occurred in Ms. Kirby and the facts of her case becomes a wholly unsupported area. A testimony in which there is nothing but her word that lacks any specificity to explain or substantiate the pain, and where the medical records do show her continuing on seeking medical attention and not treating the problem that she had once treated rather acutely. The medical records... Ms. Openshawski, this is Judge Turner. Can I just ask you this? Suppose that we disagree with the Court of Federal Claims' decision about the six-month requirement being met, and as part of that disagreement, suppose we conclude that there was no reversible error under the differential standard or review in the special master's crediting of Dr. Kinsmore's case? Yes, Your Honor. The government raised before the Court of Federal Claims and preserved its two separate numbered objections to the special master's decision pertaining to the court's consideration of expert credibility and the actual causation and burden of proof. This respondent did contest compensation under the Alston prompts in this case as well. Judge Smith did not reach those questions. And if we were to remand, Judge Smith would apply exactly the standard that we would apply, right? There's no deference to the Court of Federal Claims' decision. So why wouldn't we decide that here? And in part because it seems like it may come down to the very same assessment of whether Dr. Kinsmore could be credited against what you say is the more highly credentialed Dr. D'Onofrio. Yes. This court certainly has the authority to consider those arguments, and the government renewed them before this court. The special master was also arbitrary and capricious in the manner in which he assessed the credibility of these expert witnesses. And without rejecting Dr. D'Onofrio wholesale, rejected his key conclusions onto the scope of this injury, the feasibility of whether, you know, the underlying allegation in this case is that a flu vaccine was so mal-injected that it was down near the elbow and struck this radial nerve to course down the forearm and into the thumb. And then Dr. D'Onofrio, you know, his expert opinion, this is more likely than not what happened, and that the injection was unable to do so. What would be the basis for his saying that that factual observation about what happened at a particular flu vaccine in a flu vaccine office was not likely to have happened? Dr. D'Onofrio's opinion was a medical one, speaking as to the difficulty in actually About a fact about what happened? Isn't that what you were complaining, insisting really needed to be distinguished from when you're talking about Dr. Kinsporn's testimony about whether she still had the pain into April as opposed to whether it was medically reasonable that that would occur? Certainly. And Dr. D'Onofrio, it's certainly not fatal to Dr. D'Onofrio's opinion that whether the injection, whether he could not, as a personal witness to the injection, speak to it. There's compelling medical facts that made it medically unfeasible. The testimony in the record, Ms. Kirby, you know, with significant adipose tissue, this is a larger woman, and that whether it was even medically feasible at all for the needle to reach the radial nerve in this highly unusual manner in which it was alleged. And that has to do with the length of the needle question? Yes. And we have testimony on that issue. And Dr. D'Onofrio is the one, again, who runs the EMG laboratory at Vanderbilt University, sees nerve injuries in the adult population every day of his practice, and studies the nerve conduction tests that you test for to look for deficits on neurological tests. And Ms. Kirby's testing in this case didn't even register on that method of testing, on the EMG study. And his review of the case was however that injury occurred, it was incredibly mild, and an injury of that nature does not wax and wane. It does resolve without new insults or new source of injury. Mild radial nerve injury resolves, and that's what the record bears out. And for the special master to have found for a petitioner against the weight of that medical opinion, the weight of the contemporaneous medical record evidence was arbitrary and capricious and clear error. All right. Thank you, Counsel. Mr. Gage, you have rebuttal time. Please proceed. Thank you. The only way that this really works, Your Honors, is if the special masters are given the latitude to look at the record as a whole and consider all of the evidence. And that includes petitioner's testimony. We have numerous cases where the medical records are silent on key issues. Things weren't recorded. Somebody may not have been able to get to a medical provider. That cannot be a roadblock to a petitioner. The special master, perhaps it's easier in a case where the medical records establish every relevant point, but we don't have that luxury in this program. This is the record as a whole by the preponderance of the evidence. That has been the rule and that needs to stay the rule. That is what special master Horner did. Do you have in mind any particular case, best where an important fact had to be based on the claimant's testimony without a contemporaneous medical record? I don't remember that. I don't think that's ever been brought up to this instance in this case, was the injury immediate or was it a two-day onset? Well, there are records that say both things in this case. And the special master's resolution to that was to take the testimony of petitioner. There's absolutely nothing inappropriate about that. Sitting here right now, I know I can get you some if you wanted it, but I didn't come prepared for that, Your Honor. I'm sorry. My mind is drawing a blank, but it happens all the time. How long did it last? How severe was the pain? Did you suffer pain in this direction or that, making this type of injury or that injury more likely? We fill in those blanks every day in this program by petitioner's testimony. And we do it with expert testimony on what's most likely. And we use the medical records. But it has to be a mix. It would be unworkable if it has to be medical record corroborated in order to establish the facts. Special masters, that's what they're trained to do. That's what they do. And that's the only way that this is workable, Your Honor. Counsel, this is Judge Moore. Let me ask you one final question. And it's about Roe v. The government would like us to adopt the Roe v. presumption. That is definitely not what our Curricoccus decision was about. The Curricoccus decision was about when there is actually an articulation in the medical record by the patient that they in fact have a particular illness at a particular time or don't have a particular illness at a particular time. I believe that case was about when the onset of symptoms occurred. And those medical records repeatedly put them outside the window that was deemed appropriate, multiple records reporting in the Curricoccus case. And the Roe v. Special Master non-presidential decision, which the government would like us to adopt in order to succeed in this case, I think, goes quite a bit further. It isn't that medical records are presumed to be accurate. It is they are also presumed to be complete. The idea being that if you go to any doctor, no matter what the issue, you would tell them every single ailment that you might otherwise have. That's the standard the government would like to adopt, or whether or not you think we ought to adopt such a presumption. Yes, Your Honor. And the case is Koukouris. It was a case out of this office back in the 90s. We represented the Koukouris family. The Roe v. morph of the Koukouris doctrine would not be workable, Your Honor. And it's also not accurate. Koukouris simply says the extremely unsurprising thing that everybody, first-year law students know, that there's a reason there's an exception to the hearsay rule for medical records. And that's because there is some indicia of reliability there. But they are not infallible. They are routinely, in fact probably most of the times, not complete. And to say that we're going to create a legal presumption in this program that there's a fully articulated presentation about the person's overall health every time they visit a doctor, well, that's not how, you know, we have 15-minute medical appointments these days with computer-generated records. It's utterly unrealistic. Of course, that's not how medicine is practiced. Unfortunately for us all, I suppose, medical doctors don't know that they're creating records for legal proceedings. And we, you know, it just wouldn't work, Your Honor. I think it's unrealistic. Thank you. All right. Thank you, Mr. Gage. We thank both counsel. This case is taken under submission. Thank you. The honorable court is adjourned until tomorrow morning.